IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VANCE EDWARD JOHNSON,

    Plaintiff,                      No. 2:10-cv-2522 WBS KJN P

    vs.

R. JANZEN,                               ORDER AND

    Defendant.                  FINDINGS AND RECOMMENDATIONS

_____/

I. <u>Introduction</u>

       Plaintiff is a state prisoner proceeding without counsel. The parties' cross-motions for summary judgment are before the court. As set forth below, this court recommends that defendant's motion for summary judgment be granted, and that plaintiff's motion for summary judgment be denied.

II. <u>Background</u>

       On June 29, 2012, defendant's first motion for summary judgment was granted. (ECF No. 40.) However, plaintiff elected to reopen the motion pursuant to <u>Woods v. Carey</u>, 684 F.3d 934, 935 (9th Cir. 2012). By order filed December 21, 2012, defendant's renewed motion for summary judgment, filed December 18, 2012, was deemed timely filed. (ECF No. 53.) After receiving an extension of time, plaintiff filed an opposition on March 1, 2013. (ECF No. 67.)

1

No reply was filed.  On February 27, 2013, plaintiff filed a cross-motion for summary judgment. (ECF No. 66.)  No further briefing was filed.

III.  Plaintiff's Amended Complaint

After filing a 46-page original complaint against six defendants, on November 29, 2010, plaintiff filed a verified amended complaint naming R. Janzen as a defendant, and alleging:

> On 10-8-09, at F.S.P. Inmate Assignment Office, Lt. R. Janzen refused to place [plaintiff] on the Priority Ducat List (Instnl.) [sic] at 7:30 AM for escort release to law library the day after riot/race based lockdown; preventing him from obtaining copies to timely file writ of certiorari, in the last remaining 8 days before his U.S. Supreme Court deadline, denying his First Amendment access to the Courts.  (Extension of time and Writ was denied as "Out of time," and no other [forum] or court available for habeas relief.)  (Relate Back)

(ECF No. 10 at 3.)  In his October 12, 2011 deposition, plaintiff was asked if plaintiff "alleged that . . . [defendant] Janzen refused to place [plaintiff] on the priority [ducat] list on October 8th of 2009." (Pl.'s Depo. at 14.)[1]  Plaintiff responded no, that "[s]he refused to respond to a request by the law library -- law library's request to have me placed in a [ducat] sent to me on the 6th before the riot took place on the 7th." (Pl.'s Depo. at 14.)

IV.  Defendant's Motion for Summary Judgment

　　A.  Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56(c) is met.  "The judgment sought should be rendered if . . . there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions

////

---

[1] Because the undersigned cites portions of plaintiff's deposition testimony not cited by the parties, the Clerk is directed to file the deposition transcript as part of the instant record.

on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id., citing Fed. R. Civ. P. 56(c).  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

On December 18, 2012, plaintiff was provided contemporaneous notice of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 55); see Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

B. The Parties' Arguments

Defendant Janzen contends that he was not responsible for plaintiff's inability to attend the library on October 8, 2009, because he had no involvement in plaintiff's one-day denial from

1  going to the library. (ECF No. 53 at 5.) Although plaintiff was included on a request list to go to
2  the prison library on October 8, 2009, the program status report issued by the warden after a race
3  riot occurred precluded plaintiff from attending the law library on October 8, 2009. Defendant
4  argues that he had no control over which inmates were allowed access to the library on October
5  8, 2009, and he was required to follow the warden's orders.

6  Defendant Janzen also argues that because plaintiff had access to the library on October
7  14, 2009, prior to the filing deadline, plaintiff's claim that he missed a court deadline due to
8  being denied access to the library on October 8, 2009, eight days before the deadline ran, is
9  defeated. (ECF No. 53 at 5-6.) To the extent plaintiff argues his access to the library on October
10  14, 2009 was inadequate, defendant argues he was not in control of the dates and times that
11  inmates were allowed access to the library. (ECF No. 53 at 7.)

12  In addition, defendant argues that plaintiff's claim is barred by <u>Heck v. Humphrey</u>, 512
13  U.S. 477, 485-87 (1994). Defendant contends that plaintiff's lost opportunity to attack his
14  sentence and conviction, either by direct appeal or habeas petition, has no value unless his
15  conviction or sentence was, in fact, unlawful; thus any judgment awarding plaintiff damages for
16  this claim would necessarily imply that plaintiff's underlying conviction or sentence is invalid.

17  Finally, defendant contends that he is entitled to qualified immunity.

18  Plaintiff argues that defendant's refusal to issue plaintiff a ducat for attendance at the
19  library on October 8, 2009, made it impossible for plaintiff to make one copy of his 1,730 pages
20  for timely filing in the United States Supreme Court. (ECF No. 67-2 at 5-6.) Plaintiff argues that
21  despite defendant's declaration to the contrary, because plaintiff was a priority library user
22  ("PLU"), his placement on the "priority ducat list" or the librarian's "Inmate Pass Request," was
23  automatic, and therefore no further action on plaintiff's part was required to ensure defendant
24  issued a ducat for plaintiff to attend law library. Thus, plaintiff argues that defendant is
25  responsible for plaintiff's inability to attend the library on the subsequent black program days,
26  and defendant's failure to ducat plaintiff out on such days allegedly constitutes defendant's

deliberate refusal to follow the warden's order that blacks were allowed to attend library on those days. (ECF No. 67-2 at 9.)  In addition, plaintiff contends that defendant was put on notice during plaintiff's deposition that plaintiff's claims concerning his inability to access the library prior to his deadline were not limited to October 8, 2009, but that plaintiff claims that defendant denied plaintiff access to the law library on October 8, 9, 10, 11, 12, 13, 14 and 15, 2009. (ECF No. 67 at 2.)[2]

Defendant did not file a reply.

### C. Undisputed Facts

For purposes of summary judgment, the court finds that the following facts are not disputed.

1. Plaintiff is an African American inmate, and was in the custody of the California Department of Corrections and Rehabilitation at Folsom State Prison at all times relevant herein.

2. At all times relevant to this action, defendant Janzen was the Inmate Assignments Lieutenant at Folsom State Prison.

3. On March 27, 2009, a three judge panel of the Ninth Circuit Court of Appeals found that the state court's rejection of plaintiff's habeas claims was not objectively unreasonable, and denied plaintiff's motion to broaden the certificate of appealability. Johnson v. Runnels, No. 06-16295 (9th Cir. March 27, 2009).

4. On July 17, 2009, the Ninth Circuit Court of Appeals denied plaintiff's petition for panel rehearing and petition for rehearing en banc. Id., ECF No. 35.  The mandate issued on July 27, 2009. Id., ECF No. 37.

5. A petition for writ of certiorari is timely when it is filed within 90 days after entry of judgment and "[t]he time to file a petition for a writ of certiorari runs from the date of entry of

---

[2] Plaintiff cites to his second amended complaint (ECF No. 67 at 3), and appends it as exhibit 16. (ECF No. 67 at 68.)  However, plaintiff's motion to amend was denied without prejudice to renewal following resolution of the instant motion.  Because plaintiff's second amended complaint is not the operative complaint, plaintiff may not rely on it.

the judgment or order sought to be reviewed, and not from the issuance date of the mandate." Rule 13.3, Rules of the United States Supreme Court. Therefore, plaintiff's petition for writ of certiorari was due in the Supreme Court on or before October 15, 2009.

6. On October 6, 2009, an inmate pass request for priority library users, which included plaintiff, was submitted to the inmate assignments office to be executed on October 8, 2009.

7. On October 7, 2009, Folsom State Prison was placed on modified program status by the warden. (ECF Nos. 54-3 at 4; 67 at 59.)

8. Under the direction of the warden, the Custody Captain issued a program status report directing that no black inmates were allowed in the library on October 8, 2009.

9. Plaintiff was not allowed library access on October 8, 2009.

10. On October 14, 2009, plaintiff was escorted to the library after he sent a request for copying and paging services to the library. (ECF No. 29-2 at 8.)

11. On October 14, 2009, plaintiff signed an application for an extension of time to file his petition for writ of certiorari (ECF No. 66 at 80), which was filed in the United States Supreme Court on October 15, 2009 (ECF No. 54-5 at 2).

12. On October 30, 2009, Justice Kennedy denied plaintiff's application for an extension of time to file the petition for writ of certiorari. (ECF No. 54-5 at 2.)

13. Plaintiff's petition for writ of certiorari was postmarked October 28, 2009, and received by the United States Supreme Court on November 13, 2009. (ECF No. 67 at 7.) The Supreme Court Clerk notified plaintiff that the petition was "out-of-time," and that the Court no longer had the power to review the petition. (Id.)

D. Legal Standards

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996) (citing Bounds v. Smith, 430 U.S. 817, 821 (1977)); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011). The right is limited to the filing of direct criminal appeals, habeas petitions, and civil rights actions. Lewis, 518 U.S. at 354-55. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claims) or the loss of a meritorious suit that "cannot now be tried" (backward-looking access claims). Christopher v. Harbury, 536 U.S. 403, 413-14 (2002). A plaintiff alleging denial of access to the courts must allege an actual injury by being shut out of court. Lewis, 518 U.S. at 351. "Actual injury" is defined as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Id. at 348 (internal quotation marks omitted). "[M]eaningful access to the courts is the touchstone," and to state a claim the plaintiff must therefore "demonstrate that the alleged [violation] . . . hindered his efforts to pursue a legal claim." Id. at 351 (internal quotation marks and citation omitted).

When a prisoner asserts that he was denied access to the courts and seeks a remedy for a lost opportunity to present a legal claim, he must show: (1) the loss of a non-frivolous or

arguable underlying claim; (2) the official acts that frustrated the litigation; and (3) a remedy that may be awarded as recompense, but that is not otherwise available in a future suit. Harbury, 536 U.S. at 413-14). The prisoner must demonstrate that the defendant's acts or omissions "hindered [plaintiff's] efforts to pursue a [non-frivolous] legal claim." Lewis, 518 U.S. at 351.

In some instances, missing court deadlines or failing to make timely filings because of the denial of reasonable access to the prison law library can give rise to an access-to-courts claim. Lewis, 518 U.S. 348 (stating that inability to meet a filing deadline or present a claim can be actual injury); Ortloff v. United States, 335 F.3d 652, 656 (7th Cir. 2003) (missed court deadlines and failure to make timely filings can constitute prejudice). Such a circumstance is only true, however, if the underlying claim is nonfrivolous and arguable. Harbury, 536 U.S. at 415; Marshall v. Knight, 445 F.3d 965, 968 (7th Cir. 2006) (requiring the predicate claim to be "potentially meritorious").

E. Application

As set forth above, in plaintiff's verified amended complaint, plaintiff alleges that on October 8, 2009, the day after a race riot, defendant Janzen refused to place plaintiff on the priority ducat list for escort release to the law library, which allegedly prevented plaintiff from obtaining photocopies to timely file a writ of certiorari in the last remaining eight days before the United States Supreme Court deadline. (ECF No. 10 at 3.) However, plaintiff's claim fails based on the second element of Harbury, because the evidence demonstrates that defendant Janzen was not responsible for plaintiff's inability to attend the law library.

It is undisputed that plaintiff was not allowed to attend the library on October 8, 2009. Defendant Janzen presented evidence that he could not ducat plaintiff out to the library on October 8, 2009, because under the direction of the warden, the program status report directed that no black inmates, including plaintiff, were allowed in the library on October 8, 2009. (ECF No. 54-2 at 3.) Both parties provided the warden's program status report confirming that no black inmates were to attend the legal library on October 7 through October 8, 2009. (ECF Nos.

1  54-3 at 4; 67 at 59.)  Thus, defendant Janzen was not responsible for plaintiff's inability to attend
2  the law library on October 8, 2009, because he was required to follow the warden's orders and
3  could not ducat black inmates to the legal library on October 8, 2009.
4        Plaintiff argues that defendant did not submit a copy of the "Priority Ducat List,"
5  compiled by the Inmate Assignment Office staff, signed by defendant, and verifying that
6  plaintiff's name was placed on such list for October 8, 2009.  (ECF No. 67-2 at 3.)  However,
7  defendant was not required to produce such list as evidence because it is undisputed that plaintiff
8  was not allowed to attend the library on October 8, 2009, due to the warden's program status
9  report.  It is undisputed that the warden issued a program status report setting forth modified
10 programming such that no black inmates could attend the legal library on October 7, 2009,
11 through October 8, 2009.  Therefore, whether or not the inmate assignments office had placed
12 plaintiff's name on the priority ducat list for October 8, 2009, defendant Janzen was unable to
13 issue plaintiff a ducat for the library that day.
14       Moreover, the fact that plaintiff produced as evidence a copy of a "Priority Ducat List"
15 for November 4, 2009 that bears defendant Janzen's signature (ECF No. 67 at 45-46)
16 corroborates defendant Janzen's declaration that the inmate assignments office compiles such a
17 list in order to issue ducats.  This "Priority Ducat List" reflects that ducats are issued for various
18 reasons, i.e., medical appointments as well as for the prison law library, rather than issuing
19 ducats automatically from the library's PLU list.  Indeed, the "Inmate Pass Request" list dated
20 October 6, 2009, confirms that the librarian created such a list, and also states that "all pass lists
21 must be in the custody office no later than 1100 hours."  (ECF Nos. 54-1 at 11; 67 at 5.)  In any
22 event, plaintiff adduced no competent evidence that the inmate assignments office or defendant
23 Janzen issue ducats based solely on the PLU list, rather than a compilation of inmate pass
24 requests.  Finally, plaintiff states that on October 8, 2009, he submitted an inmate request slip for
25 emergency library use, "which created the October 14, 2009 escort" to the law library.  (ECF No.
26 67-2 at 5.)

Accordingly, plaintiff failed to rebut defendant Janzen's evidence that defendant did not cause plaintiff's failure to timely file the petition for writ of certiorari in the United States Supreme Court by refusing to ducat plaintiff to the library on October 8, 2009. Because plaintiff failed to link defendant Janzen to the alleged injury,[3] plaintiff cannot demonstrate that it was defendant Janzen who frustrated plaintiff's ability to attend the law library on October 8, 2009, or that defendant was responsible for plaintiff's inability to timely file the petition for writ of certiorari in the United States Supreme Court by October 15, 2009.[4] Thus, defendant is entitled to summary judgment.

In his deposition and briefing, plaintiff attempts to expand the allegations of his amended complaint beyond his claim that defendant Janzen prevented plaintiff from attending the library on October 8, 2009. However, this attempted expansion is not proper. Even a liberal reading of plaintiff's allegations in the operative complaint do not put defendant on notice that plaintiff alleged defendant prevented plaintiff from attending the library on subsequent days. Rather,

---

[3] Thus, the instant action is distinguishable from Phillips v. Hust, where the Ninth Circuit found that the defendant librarian's refusal to allow Phillips to comb-bind his petition for writ of certiorari to the United States Supreme Court proximately caused Phillips' inability to timely file the petition. 477 F.3d 1070, 1076 (9th Cir. 2007), overruled on other grounds Hust v. Phillips, 129 S. Ct. 1036 (2009). The Ninth Circuit held that the prison librarian's actions constituted actual injury that had caused "actual prejudice with respect to contemplated or existing litigation." Id. 477 F.3d at 1076. The court found that Phillips did not have to prove that he would have been successful on the merits to prove actual injury. Thus, in Hust, unlike here, there was a clear cause-and-effect between the defendant's actions and the loss of opportunity -- had the prison librarian not prevented Phillips from using the binding machine, Phillips would have filed his petition on time and the Supreme Court would not have rejected it as untimely.

Defendant Hust appealed to the Supreme Court, which remanded the case to the Ninth Circuit for further consideration in light of Pearson v. Callahan, 555 U.S. 223, 236 (2009), a recent Supreme Court case allowing lower courts to exercise discretion in applying the two prongs of the qualified immunity analysis. Hust v. Phillips, 129 S. Ct. 1036 (2009). On remand, the Ninth Circuit found that in light of the Supreme Court's flexible rules for pro se filings which do not require comb-binding, the librarian's view that comb-binding was not required was reasonable and therefore the librarian was entitled to qualified immunity. Id., 588 F.3d at 658.

[4] Because the court finds that defendant Janzen was not responsible for plaintiff's inability to attend the library on October 8, 2009, the court does not address the issue of whether plaintiff suffered an actual injury.

1  plaintiff specifically claimed that on October 8, 2009, defendant Janzen refused to place plaintiff
2  on the Priority Ducat List for release to the law library, and that this refusal prevented plaintiff
3  from obtaining copies to timely file the writ of certiorari in the last remaining eight days.
4        But even assuming, arguendo, plaintiff were allowed to amend to include such allegations
5  as to defendant Janzen, such claims would fail.  Defendant Janzen presented evidence that he did
6  not control the dates and times that inmates were allowed to access the library, and he did not
7  control which inmates were provided PLU status to use the library.  (Dkt. No. 29-3 at 4.)  Indeed,
8  during his deposition, plaintiff testified that once plaintiff was placed on the PLU list, it was the
9  librarian who requested plaintiff to be ducated out to the library:

> A. And so that gave me authorization or license for her [the librarian] to request that I be [ducated] that I might make that PLU appointment or that status appointment.
>
> Q. I see. So what you didn't -- once you got on the list you didn't have to do anything. It was the librarian that would do the requesting for you?
>
> A. Yes.

15  (ECF No. 67 at 12.)  Plaintiff confirmed that it was incumbent upon the librarian to make sure
16  that everyone who was on the PLU list made it on the list provided to "those up the chain" to
17  make sure ducats were issued.  (Id.)  Plaintiff also confirmed that the librarian's list goes directly
18  to defendant Janzen.  (Pl.'s Depo at 18-19.)  Plaintiff provided no evidence demonstrating that
19  the librarian included plaintiff on inmate pass requests for October 9 through 13, 2009.
20        Because the evidence demonstrates that the librarian presented the inmate assignments
21  office with the list of inmates authorized to attend the legal library, and defendant would issue
22  ducats based on such list, plaintiff's claims that defendant refused to allow plaintiff to attend the
23  library on October 9 through October 14, 2009, are unavailing.  Plaintiff's arguments that the
24  warden's subsequent orders modifying programming and providing for black inmates to attend
25  the library on certain days during the period relevant here are also unavailing.  Absent evidence
26  that defendant Janzen was presented an inmate pass request for each day black inmates were

allowed to attend the law library, but defendant Janzen refused to issue a ducat in response to such list, plaintiff fails to demonstrate a connection between defendant Janzen and plaintiff's inability to attend the library on such subsequent days.

As set forth above, defendant Janzen is entitled to summary judgment. Lewis, 518 U.S. at 351. In light of this finding, the court need not reach defendant's alternative arguments.

V. Leave to Amend

Plaintiff's September 17, 2010 original complaint was dismissed with leave to amend on October 28, 2010, and plaintiff's first amended complaint was filed on November 29, 2010. The court issued a scheduling order on July 8, 2011, requiring that pretrial motions be filed by January 13, 2012. (ECF No. 19.) By order filed October 16, 2012, plaintiff's February 8, 2012 motion for leave to file a second amended complaint was denied without prejudice. The court must determine whether plaintiff should be granted leave to file a second amended complaint.

Under Federal Rule of Civil Procedure 15(b), the court should freely grant leave to amend when justice so requires. Id. However, once the district court has filed a pretrial scheduling order, Rule 16 of the Federal Rules of Civil Procedure provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604 (9th Cir. 1992). Moreover, leave to amend is properly denied where amendment would be futile. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996).

As set forth above, plaintiff fails to demonstrate that defendant Janzen was responsible for plaintiff's inability to attend the library on October 8, 2009, or on subsequent days prior to the October 15, 2009 deadline. Thus, plaintiff should not be granted leave to amend as to defendant Janzen.

In the proposed second amended complaint, plaintiff seeks to name the warden as a defendant. However, even if plaintiff could demonstrate that the warden was responsible for plaintiff's inability to timely file the petition for writ of certiorari in the Supreme Court, the

1 warden would be entitled to qualified immunity.  "[G]overnment officials performing
2 discretionary functions, generally are shielded from liability for civil damages insofar as their
3 conduct does not violate clearly established statutory or constitutional rights of which a
4 reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).
5 Because a reasonable officer in the warden's position could have believed that authorizing a
6 modified program following a prison riot was a reasonable limitation to law library access, the
7 warden would be entitled to qualified immunity.  <u>See</u>, <u>e.g.</u>, <u>Janoe v. Garcia</u>, 2007 WL 1110914,
8 at *17 (S.D. Cal. March 29, 2007) ("Supreme Court law does not dictate a minimum number of
9 hours or any other requirement for satisfying the right of access to law libraries. . . .").

      Finally, as set forth below, the record reflects that plaintiff unreasonably delayed his efforts to photocopy the 1,730 pages of exhibits, and it is this delay that caused plaintiff's failure to timely file the petition, rather than any alleged shortcomings in plaintiff's access to the library.

      First, it is undisputed that plaintiff had 90 days in which to prepare and file the petition for writ of certiorari.  Given the 90 day deadline, and the large number of exhibits, it was unreasonable for plaintiff to wait until one week before the expiration of his deadline in which to begin his effort to photocopy 1,730 pages of exhibits.

      Second, plaintiff was earlier aware of these exhibits.  In his deposition, plaintiff confirmed that a three-judge panel at the Ninth Circuit found that the state court's rejection of plaintiff's claims was not unreasonable.  (Pl.'s Depo. at 11.)  Plaintiff sought reconsideration on the theory that

> it was fraud of court by the clerk not submitting exhibits – actually 1700 or 1,730 pages of exhibits that [were] supposed to have been in the presence of the three-judge panel and they still denied reconsideration of that.  So they only had to go by the state record.

(Pl.'s Depo. at 11.)  On July 17, 2009, the Ninth Circuit Court of Appeals denied plaintiff's petition for panel rehearing and petition for rehearing en banc.  Thus, plaintiff had identified the

////

exhibits at issue while his case was pending before the Ninth Circuit.  Therefore, his delay in photocopying the exhibits was not attributable to identifying pertinent exhibits.

Third, plaintiff had earlier opportunities to photocopy the exhibits.  Both parties provided copies of plaintiff's attendance log at the library.  (ECF Nos. 54-1 at 16; 67 at 27.)  From July 17, 2009, when the deadline period began, and October 15, 2009, the date the deadline expired, plaintiff attended the library on the following occasions:  August 12, 2009, August 13, 2009, August 14, 2009, August 15, 2009, August 22, 2009, August 27, 2009, August 28, 2009, August 29, 2009 (twice), September 3, 2009, September 5, 2009, September 6, 2009, September 16, 2009, September 24, 2009, and October 1, 2009.  (Id.)  Given this record of attendance, plaintiff could have earlier submitted his request to photocopy the 1,730 pages of exhibits.  Moreover, this evidence demonstrates that plaintiff had reasonable access to the prison library.

Fourth, plaintiff's prison experiences should have informed him of the necessity of seeking the photocopy sooner.  Plaintiff has been incarcerated since July 30, 1999.  (ECF No. 54-1 at 3.)  Plaintiff is therefore familiar with prison procedures, as well as what events may delay access to the prison library.  For example, the instant record reflects that access to the library is restricted when riots occur.  In connection with plaintiff's motion for summary judgment, plaintiff submitted declarations by other inmates attesting to alternative photocopying arrangements that can be made in the event the copying machine in the prison library was "down, broken, or unavailable because no ink cartridge to print."  (ECF No. 66-1 at 3, 7, 11, 15, 19, 23, 27, 31.)  This evidence raises an inference that plaintiff was aware of difficulties that could arise just in connection with the prison photocopier.  Thus, the record supports an inference that plaintiff was aware of difficulties that can arise in library access as well as in obtaining photocopies which would warrant seeking photocopies sooner than one week prior to the Supreme Court's deadline.

////

////

1    Finally, it is undisputed that plaintiff attended the library on October 14, 2009. However,
2 rather than file the petition for writ of certiorari without the 1,730 pages of exhibits,[5] it is
3 undisputed that plaintiff filed a request for extension of time in which to file the petition. In his
4 deposition, plaintiff confirmed that the clerk for the Ninth Circuit did not return the "1700 or
5 1,730 pages of exhibits" to plaintiff. (Pl.'s Depo. 11-12.) Given that plaintiff was facing the
6 expiration of the court's deadline the very next day, plaintiff could have filed his petition for writ
7 of certiorari, and asked the Supreme Court to (a) obtain the exhibits from the Ninth Circuit, or (b)
8 provide an extension of time to file the exhibits. By filing the request for extension of time to
9 file the petition for writ of certiorari rather than filing the petition, even without the exhibits,
10 plaintiff risked being completely foreclosed from filing the petition if the Supreme Court did not
11 grant plaintiff's request for extension of time.

12    For all of the above reasons, this court finds that no good cause exists to modify the
13 schedule at this late stage of the proceedings, and that allowing plaintiff leave to amend would be
14 futile. Therefore, plaintiff should not be granted leave to file a second amended complaint.

VI. Plaintiff's Motion for Summary Judgment

16    On February 27, 2013, plaintiff filed a motion for summary judgment. (ECF No. 66.)
17 However, the dispositive motions deadline expired on January 13, 2012. (ECF No. 19.) Plaintiff
18 did not seek leave to file a dispositive motion out of time. Moreover, in light of the above
19 findings, plaintiff's motion is not well-taken. Plaintiff's motion for summary judgment should
20 be denied.

VII. Conclusion

22    IT IS HEREBY ORDERED that the Clerk of the Court shall file the transcript of
23 plaintiff's October 12, 2011 deposition; and

---

[5] In his deposition, plaintiff stated that the reason he needed to go to the library on October 8, 2009, "was to procure copies of the 1,730 pages of exhibits that have to go to the United States Supreme Court." (ECF No. 67 at 14.)

IT IS RECOMMENDED that:

1. Defendant Janzen's motion for summary judgment (ECF No. 53) be granted with prejudice; and

2. Plaintiff's February 27, 2013 motion for summary judgment (ECF No. 66) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 19, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

john2522.msj2